### In re NORWALK TIRE & RUBBER CO.
### No. 23499.

United States District Court,
D. Connecticut.
July 6, 1950.

Gumbart, Corbin, Tyler & Cooper, New Haven, Conn., by William B. Gumbart and Donald F. Keefe, New Haven, Conn., for Wallace W. DeLaney, Trustee.

Melber Chambers and Sage, Gray, Todd & Sims, all of New York City, for the New York Trust Co., Debenture Trustee.

Francis X. Downey and Hodges, Reavis, Pantaleoni & Downey, all of New York City, for Hollis T. Gleason et al., Protective Committee for 4% Conv. Debentures.

Curtis, Trevethan & Gerety, Bridgeport, Conn., by Robert B. Hilgendorff, Bridgeport, Conn., for Numerous Unsecured General Creditors.

Nordlinger, Riegelman & Benetar, by Arthur Fribourg, all of New York City, for

Norwalk Tire & Rubber Company Debenture Holders' Protective Committee.

William L. Beers, New Haven, Conn., for L. Drexsage & Co. et al.

HINCKS, Chief Judge.

The trustee has moved for summary judgment disallowing the claims of L. Drexsage & Company, Inc., L. Drexsage & Company, and Elliott Simpson and Lorraine Simpson, verified on June 19th and filed with the Trustee on June 21st, 1950. At the hearing noticed on the petition the respondents appeared and through counsel took the position that the sole question involved was as to the proper construction of the order of May 24, 1950, prescribing the manner in which and fixing the time within which the claims of said respondents should be filed. With this analysis of the issue before the court I agree. A proper construction of the written order of course raises solely a question of law: there is immediately involved no genuine issue of fact. I hold therefore that the matter is one which may properly be presented by motion for summary judgment and turn to consider the underlying merits of the motion.

The order of May 24th, hereinafter referred to briefly as the "ORDER", on fundamental principles must be construed against the background of the proceedings in which it emanated. The salient features of the background I will briefly summarize. The trustee had filed a report showing the possibility of a substantial claim in favor of the estate against one or more of the respondents herein. And in order that said claim, if substantiated, might be recoverable, by petition of May 4th, 1950 the trustee had asked that the respondents be required to furnish certain information with regard to the ownership of certain stock and bonds of the debtor corporation which were known or believed to be owned by one or more of the respondents and to file their proofs of claim *for said securities,* and that pending the determination of said claim against the respondents the transfer of their stock and bonds be stayed. A hearing was held upon said petition on May 24th at which for the first time in these proceedings counsel for one or more of the respondents made vague intimations that one or more of the respondents might have claims against the estate other than those based on the ownership of some of the debtor's debentures. Prior to this time an amended plan of reorganization had been approved by the court and, with ballots in relation to its acceptance, had been printed and mailed to all the debtor's creditors and stockholders with accompanying literature which failed to show the existence of any such claim in favor of the respondents and indicated that no provision whatever had been made for its payment in the event of its ultimate allowance. Indeed, all the prior proceedings showed that Elliott Simpson, who had a dominating position over all the respondents to this motion, notwithstanding the bar order of July 7, 1949 which required all claims other than those founded on securities to be filed on or before September 1, 1949, had never by writing or by oral intimation in these proceedings asserted any such claims but, on the contrary, had himself caused a plan to be proposed and supported on a basis inconsistent with the existence of such a claim. When, at the hearing of May 24, 1950, counsel for respondents intimated the possibility of some such claim, thereupon on that very day counsel for the trustee prepared, and the court entered, the ORDER which not only temporarily enjoined the transfer of the debtor's securities owned by the respondents but went further and required the respondents to file "any and all claims of whatever character against the debtor or its property, whether in contract or tort, secured or unsecured, etc., etc.". And pursuant to said order but after the confirmation of the amended plan on June 8, 1950, the respondents have filed these unsecured claims, to which the pending motion is directed, which aggregate $425,000. It is important to emphasize the fact that the only notice given to the parties to these proceedings of the hearing of May 24, 1950, was by service of a copy of the trustee's petition of May 4th which directed the respondents to file proofs of claim with respect to *the debtor's bonds and stocks* owned by

them: this petition contained no suggestion that the court would be asked to lift the general bar-order of July 7, 1949 or that the respondents would be authorized or directed to file any common claims. And in fact no order was ever entered expressly lifting the bar-order of July 7, 1949. A somewhat more detailed précis of the reorganization proceedings leading up to the ORDER is contained in Paragraph 2 of the trustee's brief in support of the pending motion which may, if desired by any party, be deemed a part hereof.

The respondents now claim that the order of May 24, 1950, whereby the respondents were "required to assert in this proceeding" by a time limited all their claims of every nature should be construed as an order lifting, as to these claims, the bar-order of July 7, 1949. At the outset it will be observed that although the respondents were "required to assert" they were not expressly relieved of their failure seasonably to assert: also that it will not lightly be inferred that the intent underlying the language of the ORDER was to resuscitate a huge claim long since barred, without request by the claimants (the respondents herein) and without notice to other parties whose position was such that they had a vital interest in the subject-matter. Indeed, if the ORDER were so construed, its consistency with due process might well be doubted.

▇ Far more plausible, and indeed altogether sensible, is the contention of the trustee that the ORDER, especially in the light of its background, was intended merely to pave the way for a final adjudication upon such claims as the respondents might assert. The intimations made as to the possibility of such claims was a threat against the consummation of an orderly and efficient reorganization: their effect somewhat resembled a slander of title in that pending their final disposition they operated to disparage the value of the interest of creditors, and stockholders too, in the estate. To be sure, the bar-order was apparently a complete defense against such claims if they should ever emerge from the chrysalis of innuendo. But it lies within the equitable power of the bankruptcy court to lift the bar in a proper case and whether this was such a case could not apparently be judicially determined until the question was actually presented by the formal assertion of a claim.

▇ These considerations made it highly desirable from the standpoint of the estate that the claims should be filed and passed upon. But neither *these* nor any other considerations suggest that the situation was one calling for the lifting of the bar-order. Indeed, every equity here is opposed to such a course. A lifting of the bar is not deserved by the respondents who, if serious claimants at all, have been unconscionably dilatory in the presentation of their claims: on the other hand, a lifting of the bar at this stage may be expected to work havoc with the orderly consummation of reorganization and possibly result in serious losses to the parties.

I hold, therefore, that the trustee's request that the respondents be required to *assert their claims* is no more than a claim for trial which may not sensibly be construed as a waiver of any existing defense, and that the resulting ORDER had an effect no broader.

Thus construed, the claims which have been filed, though properly filed, are nonetheless plainly subject to the bar-order. It follows that the motion for judgment disallowing the claims should be granted.

It is so ordered.